UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JAMES LUNDY,

          Petitioner,               Case No. 19-cv-13806
                                        HON. BERNARD A. FRIEDMAN

v.

O'BELL WINN,

          Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR A WRIT OF HABEAS CORPUS,**
**DENYING A CERTIFICATE OF APPEALABILITY, AND**
**GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I.    <u>Introduction</u>

       Thomas James Lundy filed a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, challenging his convictions for two counts of first-degree criminal

sexual conduct and one count of home invasion. Lundy raises five grounds for relief.

The Court finds that his claims are procedurally defaulted or, alternatively, meritless.

The Court will deny a certificate of appealability and grant Lundy leave to proceed

in forma pauperis on appeal.

II.   Background

Lundy's convictions arise from the sexual assault of sixteen-year-old BW at her sister's apartment in Pontiac, Michigan.  BW testified that, on the night of July 18, 2010, she and her mother Evon Purdue stayed at her sister's apartment to watch her young niece while her sister was away.  (ECF No. 8-15, PageID.589-592.)  BW went to sleep in an upstairs bedroom sometime between midnight and 1:00 a.m.  (*Id.*, PageID.594.)  She was awakened by a man performing cunnilingus on her.  (*Id.*, PageID.596.)  He had removed her pajama pants and underwear.  (*Id.*)  BW tried to push him away.  (*Id.*)  The man climbed on top of her and inserted his penis into her vagina.  (*Id.*, PageID.599.)  BW continued to try to push the man away and eventually succeeded.  (*Id.*, PageID.599-600.)  BW ran downstairs, woke her mother, who had been sleeping on the couch, and told her what happened.  (*Id.*, PageID.600-01.)  After BW and her mother ran outside, a man BW identified as Lundy exited the house.  (*Id.*, PageID.602.)  BW's mother asked Lundy if he had raped her daughter; he responded that he had not.  (*Id.*)  Lundy then left in a waiting vehicle.  (*Id.*, PageID.636.)

A sexual assault nurse examiner conducted an examination of BW during the early morning hours or July 18, 2010, and completed a rape kit.  (*Id.* at 202-04.)  Melanie Morse, a forensic scientist for the Michigan State Police, testified that she performed DNA analysis on a buccal swab from Lundy and evidence from the rape

kit.  (ECF No. 8-16, PageID.804-05.)  She concluded that cervical swabs contained a mixture consistent with BW's DNA and one additional donor.  (*Id.* at 810.)  She concluded that the DNA of the additional donor matched DNA from Lundy's buccal swab sample.  (*Id.* at 817.)

BW's mother, Evon Perdue, testified that she was sleeping on her daughter's couch, when BW woke her up and said she had been raped.  (ECF No. 8-16, PageID.660-61.)  She ran outside and called 911.  (*Id.* at 662.)  While outside, she saw a man she identified as Lundy on her front porch adjusting his pants.  (*Id.*)  She was able to get the license plate of the car in which Lundy left.  (*Id.* at 677-78.)

Lundy presented no witnesses at trial.  He asserted a defense of consent.

The jury convicted Lundy of first-degree home invasion, Mich. Comp. Laws 750.110a(2), and two counts of first-degree criminal sexual conduct (CSC I), Mich. Comp. Laws 750.520b(1)(c).  The state circuit court sentenced him as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 47 to 75 years.

Lundy appealed as of right to the Michigan Court of Appeals raising three claims for relief: (i) the admission of evidence regarding the buccal swab violated Lundy's right to confrontation; (ii) the state circuit court scored the offense variables incorrectly and defense counsel was ineffective for failing to object; and (iii) the judicial fact-finding at sentencing violated Lundy's Fifth and Sixth Amendment

rights. The court of appeals affirmed the convictions, but remanded for resentencing on the incorrectly scored offense variables. *People v. Lundy*, No. 309114, 2014 WL 783488, at *2 (Mich. Ct. App. Feb. 25, 2014).

Lundy filed an application for leave to appeal with the Michigan Supreme Court raising his Confrontation Clause claim. The Michigan Supreme Court denied the application. *People v. Lundy*, 497 Mich. 854 (2014).

On remand, the trial court resentenced Lundy to concurrent terms of 37-1/2 to 60 years for the CSC I convictions and a consecutive term of 9-1/2 to 60 years for the first-degree home invasion charge. *People v. Lundy*, No. 325985, 2016 WL 3462261, at *1 (Mich. Ct. App. June 23, 2016). Due to a clerical error, he was resentenced again on January 12, 2015, to 37 to 60 years for the CSC I convictions and a consecutive term of 10 to 60 years for the first-degree home invasion conviction. *Id.*

Lundy appealed the amended judgment of sentence to the Michigan Court of Appeals claiming that the consecutive nature of his sentences violates the principle of proportionality and constitutes cruel and unusual punishment. *Id.* The Michigan Court of Appeals affirmed. *Id.* Lundy then sought and was denied leave to appeal in the Michigan Supreme Court. *People v. Lundy*, 500 Mich. 900 (2016).

While his appeal from the resentencing remained pending, Lundy filed a motion for relief from judgment in the trial court raising six claims: (i) that trial

counsel was ineffective for failing to accept a plea offer despite Lundy's explicit instructions to do so and failing to notify the trial court about Lundy's diminished capacity; (ii) that subsequent trial counsel failed to properly investigate and present witnesses; (iii) that trial counsel was ineffective for failing to object to the admission of hearsay testimony; (iv) that trial counsel was ineffective for failing to properly advise Lundy about the sentencing guidelines; (v) that the prejudicial effect of these errors amounted to cumulative error; and (vi) that Lundy received the ineffective assistance of appellate counsel. The trial court denied the motion without prejudice as premature since Lundy's appeal from the resentencing was still pending. (ECF No. 8-23, PageID.1228).

Lundy refiled the same motion after exhausting his direct appeal. The trial court denied the motion. (ECF No. 8-30). Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal. *People v. Lundy*, No. 343447 (Mich. Ct. App. Oct. 8, 2018); *People v. Lundy*, 504 Mich. 900 (2019).

Lundy then filed the current petition for a writ of habeas corpus. He raises the following claims:

> I. Trial counsel was constitutionally ineffective for failing to accept the prosecution's plea offer against Lundy's explicit instructions and failing to make the court aware of Lundy's lack of competence due to a lack of medication that affected his ability to knowingly and understandingly accept the plea offer prior to the second preliminary examination.

II.    Trial counsel was constitutionally ineffective for failing to properly investigate witnesses and present the officer who wrote the police report contradicting Purdue's statement at preliminary examination and at trial.

III.    Trial counsel was constitutionally ineffective for failing to object to hearsay statements allegedly made about Lundy sexually assaulting another person, thus denying Lundy his right to confront the witnesses against him.

IV.    Trial counsel was constitutionally ineffective for failing to understand the sentencing guidelines and thus failing to inform Lundy at the second preliminary examination that his minimum guideline range would increase from 78 months to 171 months for first-degree criminal sexual conduct if he did not accept the plea offer.

V.    Appellate counsel was constitutionally ineffective for failing to raise the preceding claims on appeal.

III.    <u>Legal Standards</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted).

Pursuant to § 2254(d) "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only with clear and convincing evidence. *Id.*  For claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

IV.   Analysis

   A.   *Procedural Default*

Lundy alleges in his first four claims that he was denied the effective assistance of trial counsel.  He concedes that these claims are procedurally defaulted and, in his fifth claim, maintains that his appellate attorney's ineffectiveness establishes cause and prejudice to excuse the default.

A habeas claim is procedurally defaulted if the petitioner's failure to comply with a state procedural rule was an "adequate and independent" ground for the state court's denial of relief on that claim. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010).  Lundy concedes procedural default because the last reasoned state court decision – the trial court's order denying his motion for relief from judgment – denied relief under Mich. Ct. R. 6.508(D)(3). Enforcement of Rule 6.508(D)(3) constitutes an independent and adequate state ground sufficient to invoke the procedural default bar. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).  The Court may consider the merits of Lundy's ineffective assistance of trial counsel

claims only if he shows cause for failing to raise them on direct appeal and that he would be prejudiced if the Court fails to consider them, or if he shows that a constitutional error resulted in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

As noted previously, Lundy asserts that appellate counsel's ineffectiveness provides sufficient cause and prejudice to excuse the default. To evaluate whether appellate counsel performed deficiently by failing to raise the ineffective assistance of trial counsel claims, the Court must "assess the strength of the claim[s] that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). When an ineffective assistance of appellate counsel claim is asserted as cause to excuse procedural default, the Court typically applies a *de novo* standard of review. *Chase v. Macauley*, 971 F.3d 582, 592 (6th Cir. 2020). But since the state court adjudicated the underlying ineffective assistance of trial counsel claims on the merits, the ineffective assistance of appellate counsel claim is reviewed *de novo* and the underlying ineffective assistance of trial counsel claims are reviewed using the AEDPA's deferential standards. *Smith v. Warden, Toledo Corr. Inst.*, No. 20-3472, 2022 WL 601860, at *4 (6th Cir. Mar. 1, 2022)

For the following reasons, the state court's holding that trial counsel was not ineffective (1) did not rely on an unreasonable determination of the facts, and (2)

was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### B.    Ineffective Assistance of Counsel

The Sixth Amendment right to counsel guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Id.* at 687-88. The *Strickland* standard is a difficult one to satisfy. On appeal, "counsel has no obligation to raise every possible claim." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). "[T]he decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment" and "[c]ounsel's performance is strongly presumed to be effective." *Id*. (quotation omitted).

### 1.    Plea Offer

Lundy was originally charged with one count of third-degree criminal sexual conduct. A preliminary examination was held on that charge and he was bound over for trial. (ECF No. 8-2.) The prosecution filed a motion to amend the charges to two counts of first-degree criminal sexual conduct and one count of first-degree home invasion. The case was remanded to the district court for a second preliminary examination and Lundy was bound over on the amended charges. (ECF No. 8-3.) Prior to the second preliminary examination, defense counsel placed on the record

10

that Lundy was offered a plea deal with a minimum guideline range of 78 to 260 months, but that if the exam proceeded, the minimum guidelines would start at 120 months. (ECF No. 8-5, PageID.252.) When asked whether he was "foregoing" the plea deal and wanted to move forward with the preliminary examination, Lundy replied, "Yes, sir." (*Id.*)

Lundy now argues that counsel failed to accept the plea offer even though he told counsel to accept the offer. He also maintains that counsel failed to advise the trial court about his diminished mental capacity which, Lundy now argues, impeded his ability to understand the plea offer.

The state circuit court found the record "devoid of support" for Lundy's claim that he instructed defense counsel to accept the plea. The court held that Lundy had "ample opportunities to inform [the trial court] and/or his counsel … that Attorney Humphrey disregarded instructions … to accept a plea offer." (ECF No. 8-30, PageID.1523.) The state court was also unpersuaded by Lundy's affidavit stating that he told counsel to accept the plea. (ECF No. 8-27, PageID.1472). The state circuit court held that Lundy's "grossly tardy, self-serving affidavit … claiming for the *first* time that Attorney Humphrey was instructed to accept the plea" was insufficient to overcome the strong presumption that counsel performed effectively, "especially since, at the pretrial at issue, the [Lundy] twice, if not three times,

11

confirmed, on the record, that he was foregoing the plea offer and desired to go forward with the exam."   (ECF No. 8-30, PageID.1523) (emphasis in original).

Lundy argues that the state circuit court's decision is based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(2).   A state court's factual finding is unreasonable if it is rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   To decide whether a state court has made an unreasonable determination of the facts, "the question ... is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."   *Hill v. Shoop*, 11 F.4th 373, 384 (6th Cir. 2021) (cleaned up).

Lundy points to portions of the preliminary examination transcript and a later hearing to support his contention.   But his statements do not provide clear and convincing evidence that the state court unreasonably determined the facts.   A fair reading of the transcripts supports the state circuit court's conclusion that there was no indication Lundy had instructed counsel to accept the plea offer.   For example, Lundy answered in the affirmative when asked whether he wanted to forego the plea offer.   The state circuit court's decision is not the *only* reading of the transcript, but it is a reasonable one.   And because the trial court's interpretation of the evidence is reasonable, Lundy fails to establish that this was an unreasonable factual determination.

Next, Lundy claims that the trial court unreasonably determined that during a pretrial hearing he "twice, if not three times, confirmed, on the record that he was foregoing the plea offer and desired to go forward with the exam." (ECF No. 8-30, PageID.1523.) Lundy maintains that the trial court's conclusion improperly assumes he understood that going forward with the exam meant rejecting the plea offer. He claims he had the contrary understanding, *i.e.*, that going forward with the exam was necessary to accept the plea.

Here again, the record supports the state circuit court's factual findings. When reasonable "minds reviewing the record" might differ on a factual finding the Court may not overturn a state court's factual findings on habeas review. *See Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Even if the record may have supported a different factual finding, this "does not suffice to supersede the trial court's determination." *Id.*

The trial court additionally denied Lundy's claim that counsel was ineffective for failing to alert the court to his diminished capacity and for failing to ensure that he understood the plea offer. The state court held that, at the time the plea offer was rejected, defense counsel had no reason to question Lundy's ability to understand and evaluate the plea offer. (ECF No. 8-30, PageID.1524.) The issue of competency was not raised until March 2011, the date on which the trial was originally scheduled to commence. The case was adjourned and Lundy was referred to the Forensic

Center for examinations on competency and criminal responsibility. (*Id.*) The forensic examiner determined that Lundy was competent to stand trial and that he did not meet the criteria for legal insanity. (*Id.*) The trial court held that, in light of this record, defense counsel was not ineffective in failing to raise the issue. (*Id.*)

Lundy maintains that the March 2011 Forensic Center evaluations are irrelevant to whether he was competent enough to understand and reject the plea offer. He argues that his diminished capacity at the time he rejected the plea offer was readily apparent based on his "nonsensical answers." (ECF No. 3, PageID.53.) The Court finds that Lundy's answers were responsive and would not have alerted counsel or the state circuit court to suspect that he suffered from diminished capacity. Although Lundy was not receiving his medications at the time of the second preliminary examination, he has not shown this rendered him incompetent to understand and evaluate the plea offer.

The standard for obtaining habeas corpus relief is "difficult to meet", *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation omitted), and in the context of an ineffective assistance of counsel claim, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (cleaned up). On this record, Lundy has not overcome this doubly deferential standard of review.

14

2. Failure to Call Impeachment Witness

In his second claim, Lundy argues that counsel was ineffective for failing to investigate or call police officer Dwight Green to impeach the testimony of the victim's mother, Evon Perdue. A police report apparently authored by Green states that Perdue reported that she was outside the home when the victim came down the stairs screaming. (ECF No. 8-27, PageID.1279.) At trial, Perdue testified that she was on the couch inside the home when the victim came down the stairs. Lundy maintains that because Perdue's credibility was essential to the jury's determination whether he acted with consent when he entered the house and engaged in intercourse with the victim, counsel was ineffective in failing to call Green to impeach Perdue's trial testimony.

The state circuit court reasonably rejected Lundy's claim that defense counsel failed to investigate the officer's possible testimony because the record was silent on this question. (ECF No. 8-30, PageID.1526.) Such a conclusory allegation was insufficient to overcome the strong presumption that counsel was effective. (*Id.*)

The state circuit court further concluded that Lundy failed to overcome the presumption that counsel's decision to forego calling Green to testify was a matter of trial strategy. (*Id.* at 1526-27.) The court reasoned that ascertaining Perdue's exact location when the victim informed her that she had been raped was not dispositive of the ultimate question in the case. And importantly, while Perdue's

testimony may have been inconsistent with Green's police report, it was consistent with Perdue's 911 call, preliminary examination, and trial testimony. Because counsel reasonably concluded that Green's testimony would offer little, if anything, to bolster the defense, the state circuit court's disposition of this claim was not contrary to, or an unreasonable application of, *Strickland.*

> 3.    Hearsay and the Confrontation Clause

Lundy's next ineffective assistance of counsel claim concerns the testimony of Aquia Green. Green and several other women, including Torrie Emery, confronted Lundy at his home the morning after the rape. Police arrived at some point during this confrontation. On cross-examination, Green testified that Emery told police that Lundy had raped her young male cousin previously. (ECF No. 8-16, PageID.772.) On re-direct, Green testified that as they approached Lundy's house, Emery said Lundy "need to go to jail, he done my little cousin." (*Id.* at PageID.777.) Lundy argues that counsel was ineffective for failing to object on the grounds that the testimony was inadmissible under Michigan Rules of Evidence 403 and 404(b), it was inadmissible hearsay evidence, and its admission violated the Confrontation Clause. He argues that counsel's failure prejudiced his defense because if the jurors had been instructed to disregard the testimony there is a reasonable probability that the result of the proceeding would have been different.

The state circuit court held that any objection would have been meritless because the testimony was not offered to prove the truth of the matter asserted and, therefore, was not hearsay.  (ECF No. 8-30, PageID.1528-29.)  The court also found no violation of the right to confrontation because the Confrontation Clause "does not bar the use of non-testimonial out-of-court statements, or testimonial statements offered for purposes other than establishing the truth of the matter asserted." (*Id.* at 1529).  Finally, the court held that, even if defense counsel had a basis for objecting, his decision not to do so was "consistent with sound trial strategy." (*Id.*)

"Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  And the state court's conclusion that defense counsel was not ineffective was objectively reasonable.  The admission of an out-of-court testimonial statement does not violate a defendant's right to confrontation where the statement is not offered for the truth of the matter asserted.  *United States v. Gibbs*, 506 F.3d 479, 486 (6th Cir. 2007). Lundy has not shown that the state circuit court's hearsay ruling is incorrect.  In addition, counsel reasonably could have concluded that the wisest course was not to object to avoid calling unnecessary attention to the remarks. *See United States v. Caver*, 470 F.3d 220, 244 (6th Cir. 2006) ("[N]ot drawing attention to [a] statement may be perfectly sound from a tactical standpoint.").

For all these reasons, Lundy has not demonstrated that the state court's decision to deny this claim was contrary to, or an unreasonable application of, *Strickland*.

          4.      Sentencing Guidelines

Lundy next claims that counsel was ineffective for failing to accurately inform him that rejecting the plea would increase his guidelines range from 78 months to the 171-month minimum calculated after the trial.

Prior to the second preliminary examination, defense counsel specifically stated on the record that the minimum guidelines range would increase:

> Counsel: I just want to place this on the record the fact that at this particular time before the exam starts, before the exam starts Mr. Lundy, Judge, there is an offer on the table for him to plead guilty as to the charges as they currently are before they are amended, which would keep him in the guideline range of 78 months to 260 months.  If we go forward on this exam, this will propel his guidelines to a minimum of ten years plus.  And I just want to make that clear on the record to Mr. Lundy that at this particular time, Mr. Lundy, you are foregoing that and you want to go forward with this exam; is that correct, sir?
>
> Lundy: Yes, sir.

(ECF No. 8-5, PageID.252).

The trial court held that counsel's failure to precisely forecast that the minimum guidelines range would be 171 months did not render counsel ineffective:

> The fact Attorney Humphrey could not predict how much the guidelines would increase after trial is not a basis on which to find ineffective assistance of counsel.  The guideline range is subject to change based on information introduced at trial, or contained in the

Presentence Investigation Report, rendering it impossible for an attorney at a preliminary examination to precisely predict the final guidelines range if his client chooses to forgo a plea based on a preliminary guidelines range and instead proceeds to trial.

***

An attorney's incorrect prediction concerning a client's sentence is insufficient to establish ineffective assistance. *See People v Haynes* (After Remand), 221 Mich. App. 551, 559 (1997) (citations omitted) ("[T]his Court has stated that counsel's incorrect prediction concerning a defendant's sentence and the prosecutor's role in sentencing is not enough to support a claim of ineffective assistance of counsel") ... Thus, even if Attorney Humphrey's prediction was incorrect, it is not a sufficient basis for claiming ineffective assistance of counsel.[] Indeed, ... the Defendant has failed even to show that Attorney Humphrey incorrectly predicted the guidelines range as it would have stood, preliminarily, at the time of the second preliminary examination. Thus, having failed to demonstrate actual prejudice (or good cause for failing to raise this argument sooner), this argument cannot be a basis for relief.

(ECF No. 8-30, PageID.1521-25, 1530-32.)

Defense counsel predicted a considerably higher sentencing range in the event Lundy proceed to trial and was found guilty. Counsel's inability to predict with absolute certainty the exact minimum guidelines sentence after trial did not render counsel ineffective. Because guidelines are often impacted at least in part by the testimony elicited during a trial, counsel could not have predicted the guidelines with absolute certainty. *See United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir. 1989) (holding that a "mistaken prediction" of the sentencing guidelines range should not be characterized as ineffective assistance of counsel); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir.1993) ("[m]isinformation from a defendant's attorney, such as an

incorrect estimate of the offense severity rating, standing alone, does not constitute ineffective assistance of counsel.").

And "because the Strickland standard, especially as applied in the plea-bargain context, is a general one, the range of reasonable applications permissible under § 2254(d) is substantial." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Consequently, Lundy has not shown that the state circuit court's resolution of this claim was an unreasonable application of *Strickland*, or that the denial of relief was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

C.    *Ineffective Assistance of Appellate Counsel*

Lundy argues that appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct review and that counsel's ineffectiveness excuses the procedural default.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Petitioners are not entitled to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). According to the Supreme Court:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and

20

effective advocacy. . . . [n]othing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754; *see also Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues.").

As addressed above, the claims Lundy intended to raise on appeal lack merit. Appellate counsel, therefore, was not ineffective in failing to raise them.

Since Lundy fails to show cause and prejudice for neglecting to raise these claims on a direct appeal, they are barred from habeas review unless Lundy can establish that a constitutional error resulted in a fundamental miscarriage of justice, *i.e.*, a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. Lundy fails to present new, reliable evidence from which no reasonable juror would have found him guilty. So his ineffective assistance of counsel claims are procedurally defaulted.

## V.   Certificate of Appealability

Before Lundy may appeal the Court's decision, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a

court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Here, Lundy fails to make a substantial showing of the denial of a constitutional right as to his habeas claims, and jurists of reason would not debate the correctness of the Court's procedural rulings. So the Court denies a certificate of appealability.

Lastly, the Court grants Lundy leave to appeal in forma pauperis because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A). Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied.


IT IS FURTHER ORDERED that a certificate of appealability is denied.


IT IS FURTHER ORDERED that Lundy may proceed in forma pauperis on

appeal if he chooses to appeal this decision.


**IT IS SO ORDERED.**

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: March 13, 2023
       Detroit, Michigan